Good morning, your honors. I may please the court. Joseph Horry representing appellant Jordan Jucutan. And I should say, by coincidence, I was also counsel for Minto, so I'd be happy to address any questions that you may have. It certainly is a coincidence. I'd like to reserve, if I may, two minutes for rebuttal. Now, there's no dispute that a five-year statute of limitations applies to the offenses charged in this case. And there's no dispute that the indictment in this case was handed down more than five years after the acts alleged. So the question is, was the statute of limitations somehow suspended? Specifically, has the government proved by a preponderance of the evidence, as it concedes it must, that the five-year statute of limitations has been suspended by the One of them is a case of fraud against the United States. But the only fraud alleged here is against a private company known as DocuPack. Another is if the case involves the property of the United States, but it doesn't. The district court thought it did, but the government on appeal has expressly conceded this point. Now, the one way in which it could have applied, however, is if the offenses were that contract was directly connected with some congressionally authorized use of military force that was then in effect, which means either what's been called the Afghanistan authorized use of military force, or arguably, the government thinks so, we don't, the Iraq authorized use of military force. And there's no evidence of any such contract or having any such direct connection. Indeed, there is no clear evidence of trial of any contract at all. Well, there was testimony of the umbrella contract and the government introduced exhibits 28 and 29, the task orders, correct? Yeah, there were the task orders. And there were also invoices that were introduced into evidence, correct? There were invoices, yes. The task orders are really the only thing that could fall into the statutory meaning. Why couldn't the testimony... May I have your attention? May I have your attention, please? The fire alert on the 24th floor, 23rd floor, and the 25th floor has been cleared. May I have your attention? May I have your attention, please? The fire alert has been cleared for the 23rd floor, 24th floor, and the 25th floor. Thank you very much. I'm glad they let us know that there was a fire. Thank you for letting us know it's been cleared. Can you add back a minute to his time? So why wasn't the testimony, for example, of William Stewart sufficient to establish the existence of the umbrella contract? Well, we don't know what the terms of the contract were, so it's hard for us to tell if there's a direct connection between the offense's charge and the contract. That hasn't been proved because we don't know what the contract says. But Mr. Stewart testified that it was because they were 20,000 to 28,000 people short of their manpower, and in order to fulfill their obligation to the Department of the Army for the Global War on Terror, why isn't that enough with regard to the umbrella contract even exclusive of the task orders? Well, I think you get to that through the task orders anyway, either way. And, for example, through the task orders, what they apparently are, this is 28 and 29, their orders purchasing DOCUPAC's services and administering the Army Reserve Recruiting Assistance Program. So let's say the offenses were committed in the connection with the performance by DOCUPAC of one or the other of these purchase orders. The question remains, does either of the purchase orders have any direct connection with either of the authorized uses of military force? Now, neither of them says anything about Iraq or Afghanistan, neither says anything about September 11th or Al-Qaeda or the Taliban. The government hangs its hat on one passing reference in one of the purchase orders to the so-called Global War on Terror. But nothing in the purchase order claims that this Global War on Terror is the purpose of the purchase order or the recruitment program itself. It just says challenges remain. But also, as I understand it, under the more narrow 2008 amendment, there has to be a direct connection to one of two, either the Iraq or the Afghanistan situation and not something else. Yes. It says directly connected or related, yes? That's right. And the Global War on Terror is global, right? Right. It's broader in some senses. It's narrower in some other senses. It is basically a colloquial expression. It is not what the statute requires, which is a specific authorization for the use of the armed forces. In Public Law 107-40, the 9-11 authorization, it says, whereas the President has authority under the Constitution to take action to deter and prevent acts of international terrorism against the United States. Why isn't this directly connected or related to that? Well, it's directed to those responsible for the September 11th terrorist attacks and those who are aiding and assisting them. It doesn't apply to other acts of terrorism committed by other people for other reasons. Well, the actual authorization says that the purpose of the authorization is in order to prevent any future acts of international terrorism against the United States by such or related to that by a preponderance of the evidence. Well, the most that can be said about the recruitment of the reservists and any connection is that the conflicts may have caused the local reserve units to become depleted as the reserve units were called up to active duty. And the program was then created to keep the local units manned so as not to lose funding. There's testimony as to that from page 683 of the record. The conflict did not cause the purchase orders. The purchase orders were not for recruiting soldiers, for example, to fight in Afghanistan. The reserve had to be maintained as a reserve. And so the conflict is at least one step removed from the purchase order. It's not a direct but rather an indirect connection with an intervening cause. Now, so even assuming that the word direct modifies both words, even assuming it modifies connect and related, you seem to really be parsing related, which even if it's directly related is a pretty broad term. Well, directly related, it's not as broad a term as related. And I think that's... I agree with that. If directly modifies related as well, but it's still a pretty broad term. I think it does. In the case of... There's the so-called series qualifier canon where a qualifying word, an adverb in this case, in front of a series of words modifies each of the words in succession. Nobody's addressed this issue in the case. There's the opposite one. No one's disputed this. The direct antecedent rule or something to that effect. And it hasn't... There's been no dispute over that. It does precede both terms, connected and related. And if it didn't apply to both, there would be no point adding it at all. I mean, connected to and related to are essentially synonymous. If you had related to permissible, then there'd be no point in making it directly connected to. If anything, connected to is narrower than related. At some point, you suggest that the task orders didn't cover the requisite time period. Yes. Do you want to talk about that? Yeah, that's something we raise at the end of our opening brief. The government doesn't address that at all. We looked at the timing of the invoices that were sent out. I don't understand your argument on this point, because counts 1, 2, 5, and 6 specifically have as an active date of the alleged offenses, August 2507 and August 2607, specifically alleged in the indictment, which are both covered by the task order in Exhibit 29, correct? Yeah, but I think the evidence shows a later date. The evidence is in the invoices, which is what we presented there. Actually, as to two of the items, even in the indictment. Just a minute. I'm sorry. The question is the contract, right? Excuse me? I mean, the task order is the contract. Yes. And if it covers the requisite time period, why isn't that good enough? Well, the question, what is the requisite time period? Isn't it the dates alleged in the indictment? It's what's alleged in the indictment, no? Well, if the proof doesn't conform to the indictment, you have an issue with that. What are you telling me? The proof doesn't conform to the indictment because? Well, we set out the proof at the end of the opening brief. Proof of what? Proof of the dates of the invoices. But why is the dates of the invoices controlling when counts, for example, 1, 2, 5, and 6 don't allege that they relate to the dates of the invoices, but relate to other specific acts? And the second superseding indictment also says that the period of the scheme was August 07 to November 09. Yeah, if that's what the, if it's separate acts other than the invoices, which the indictment relates to, then there would be a problem as to those August dates. But even in the indictment, as there are two dates in the indictment which are outside the scope of either of the purchases. Except for the term of the scheme alleged in the indictment. Excuse me? The indictment alleges the scheme ran from August 07 to November 09. And that the specific counts specifically occurred on specific dates within that scheme. Well, the statute of limitations and the Wartime Suspension of Limitations Act is not based on a scheme. It's based on a contract or purchase order. And the purchase orders that we have in evidence are limited in time. I think those are two different issues, but I understand your argument. In that case, that's all I have. I'll reserve two minutes for rebuttal, if I may. All right. So you're at your time, but I'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. Garth Backe on behalf of the United States. The United States submits that there is sufficient evidence and basis in the record for this court to conclude that A, there was a contract in existence between DocuPak and the Army We do think that that is the applicable contract. The task force, the purchase orders, the purchase orders in particular are more towards the elements of the crime. Which is the applicable contract? I'm sorry. The contract between DocuPak and the Army Reserves for the execution or implementation. Not the task orders? No. That's evidence of. But wasn't the more general one actually not with the Army Reserve, but with the National Guard or with respect to the National Guard? And then there was a kind of sub or delegation or something through the task orders? Yes, Your Honor. I mean, I think it's. So without the task orders, you can't get there. I think you can infer from the record in William Stewart's testimony that there's a contractual relationship between the two entities. And I think that's almost a matter of common sense that. Which two entities being the Army Reserve and the National Guard, is that what you're saying? Yes, Your Honor. This is the umbrella contract that you're talking about that never came into evidence. Correct, Your Honor. That's the contract that this is based on. Correct, Your Honor. Or what. Is that your limitations? Yes, Your Honor. Yes, Your Honor. Well, if it never came, if that's what you're relying on, then how can we say that it's directly connected to the two relevant authorization orders if we don't even know what it says? Well, Mr. Stewart offered testimony as to what it was about. And the task force, the task order. Did he testify that it specifically stated that it was related to the Iraq and the Afghanistan? He said global war on terror. Wait a second. Isn't there a rule that, an evidentiary rule, a long time since I've been a trial judge, but that says that if you have a document that says something, you can't have testimony because that's not the best evidence of what the document itself says? Perhaps, Your Honor. I mean, but also I think that, I don't think evidentiary. Why don't we have the document so we can look at it? All right, so I'll. The government did not do a great job making a record in this case. That is indisputable. We did not deny that. All right, so. We could have helped ourselves out better. So if he said global war on terror and the relevant task order, or at least one of them, says global war on terror. So what the real, does this case come down to whether global war on terror? I think that's a finite issue, yes. Okay. But, so the government represents, but also just based on his testimony about the need. I mean, he said this came about after 9-11 and that act in both the task force, excuse me, the task order and his testimony talked about how the reserves were actually becoming operational. They were the ones on the front lines fighting in combat in both Afghanistan and Iraq. The government thinks the global war on terror falls under both Iraq or Afghanistan. Both of them combined is a better argument. But if we had to pick, the one pertaining to Afghanistan really does speak more to the global war on terror. Because I keep calling it the Afghan use, authorization for the use of military. But the word Afghanistan is not in the official word. Are you talking about the 2002 statement? Yes. That's 2001, I believe, Your Honor. 2001? 107-40. Yes. Public law 107-40. Yes. Yes, Your Honor. The one you were referencing. And that has no geographic limitation. The one in Iraq talks about it is for combat operations in Iraq. I'll call it the Afghanistan one, but that did not have such limitations. So yes, Your Honor. I believe that the very fine issue in this case is whether those authorizations meet the definition. And we would submit they would, certainly by our preponderance of the evidence, or would submit that appellant hasn't proven that that was erroneous. Your Honor, as I believe you picked up on, the appellant is propounding the word connection. But it's also a relationship. And I'll concede the direct applies to relation. But relation is broader than connection. And so I think that that does not have to be a connection. It just has to be a direct relationship. Those are really my main points. But I did want to address one, I would say, potential elephant in the room that has not been brought up by any party, including the United States, in its answering brief. But three of the four counts occurred in 2007, which is before the amendments to the WSLA. And so there is an argument the government would submit that three of those four counts can be upheld under either version. The pre-version, which was just war, and the vast majority of case law said that- But that's not in your brief. It's not, Your Honor. But we're staring at it. Congress, obviously, at least, was extremely worried about that, which is why they did the amendment. Correct. But the government has cited case law pre-2008 for its support of its argument at war in showing that most of the cases, the majority of cases, found that those two authorizations met the definition. But we certainly don't, in your view, we don't need to reach that issue in order to affirm. Yes, Your Honor. But it is out there. And if the court wanted supplemental briefing, that might be a good idea if it gets that far. But as we said in the beginning, this can be resolved under, as briefed, under the 2008 version. I guess the reason this case is somewhat disturbing is that it's a use of the towing statute that is at least unusual. Because it appears that the main purpose of it was really that when things are going on and so on. But here, everything that happened happened in the United States. In other words, there doesn't seem to be any excuse for the delay. Is there any reason for the delay? I mean, I think they were talking about that one of the reasons of the program in the beginning was that they were undermanned by about 30,000 people. Well, I know. That's why they had the... But this is, in many ways, just a run-of-the-mill domestic fraud. And exactly why it should be subject to these special rules for war contracts when there's nothing particular about it that makes it a war contract. It's disturbing. It's hard to counter your point, Your Honor. I'm sorry, what? It's hard to counter your point. You have a good argument. That's certainly something that's... And maybe that has to do with what directly means. Maybe directly means something that has to do with the physical prosecution of the war rather than this thing that's all going on in the United States and isn't really subject to anything special about its being a war contract. I would disagree that it goes to that point. I think it's more the underlying policies of the United States. But I don't think it sheds light on our interpretation of direct connection. I think that is guided by what war or what conflict we're analyzing. Is that the authorization for that war conflict? Is that still going on? Yes, Your Honor. The government believes both are still going on. So anything, any fraud that happens in the military in the United States or elsewhere that somehow is related to that authorization now, you get the extra five years to prosecute? Quite possibly, yes, Your Honor. If it fits into the offense conducts... Well, it's not an extra five years. It's forever, right? It's unlimited, right? Oh, right. It's five years except if you... Yeah. So it's unlimited time. And the five years is suspended. Right. So this sort of makes unlimited... In essence, the government has no statute of limitations on anything you can connect to a contract related to that general war on terror authorization. Quite possibly, but that would be for something for Congress to correct. No, I know. I'm not saying I'm going to correct that, Dean. It's not going to happen. But I'm just saying that's really how broad it is. At present time, if the offenses match the definitions, then yes, then it could. Interesting. I have nothing further unless the panel has any questions. All right. Thank you, counsel. Thank you. Thank you, Your Honor. Just on that last point, we raised this. We believe that the authorization for the authorized use of force in Iraq has terminated with the president's proclamation in 2010. And that by that proclamation, five years after that, you still come out... It still comes out ahead of the time when the indictment was brought in this... Why does that matter? It's only one of the two, right? Excuse me? I thought it's only one of the two. Well, one of the two. Yeah. The Afghanistan one would still be okay. The Iraq one. It may come into issue just in terms of this casual use of the term, the global war on terrorism. What do you mean by that? Oh, I see. Because you're saying the global war on terrorism. It could be that one. Maybe it could be the whole thing together. It can't be the one in Iraq. What about directly? What does directly mean? In other words, I hear what we have is a provision for getting people into the reserves to make it more possible to get more people on the front lines at some point. But the people who are beginning to get into the reserves are not going directly to the front lines. That's not the purpose, right? And one can imagine many other domestic contracts. If it's a domestic contract for some computers to track what's going on and so on. What does directly mean in this context? The definition of directly on page 28 of our opening brief where we quote from the Supreme Court, the word direct implies that the activity or condition invoked or blamed shall operate proximately, not immediately, remotely, or collaterally to produce the effect. It connotes the absence of an efficient intervening agency or condition. Now, that's from an old case, Carter v. Carter Coal Company, where the direct question in that case was, it's an old commerce clause case. Does it need, in order for something to be constitutional under the commerce clause, does there need to be a direct or indirect effect on commerce? The holding of that case is no longer observed with respect to the commerce clause. The test of direct versus indirect is no longer applied. That's a pre-New Deal case where that was the case. But it's still the best definition of direct in a case where you do need to make that distinction, as you do in this case. The best definition that we could locate and clearest definition to distinguish between direct and indirect. And we would submit that any, that the, as Your Honor explained, that, you know, you go into the reserves, you're not going, you're not being called into the conflict itself. You're just being called into the reserves as reserves. On this argument that you're making now, was this made to the district court that this wasn't directly related to the authorized use of force? Did you ever make that argument to the district court? We weren't counseling the district court. Did your predecessor ever make that argument in the district court? I don't think the issue came up. I think it was argued that the statute of limitations was not suspended. And it was that clause that requiring a direct connection or direct relation was relied on in making the argument. But I don't think it was a contested argument. I mean, basically what the argument was, was the United States wasn't defrauded, right? Also, the argument was made that there wasn't the requisite contact or purchase order. That was made as well. Your Honor, I cancel your time as you've been out two and a half minutes. Thank you. Thank you very much.
judges: Wardlaw, Berzon, Bennett